1
2
3
4
5
6
7
8           IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10  FOUR IN ONE COMPANY, INC., et al.,

11              Plaintiffs,                    No. CIV S-08-3017 MCE EFB

12        vs.

13  SK FOODS, L.P., et al.,

14              Defendants.                    ORDER
                                          /
15

16        On September 15, 2010, the court heard intervenor United States Department of Justice's

17  motion for a limited stay of discovery.  Dckt. No. 159.  Plaintiffs oppose the motion, Dckt. No.

18  164; and defendants Ingomar Packing Company, Los Gatos Tomato Products, Stuart Woolf, and

19  Scott Salyer each filed statements of non-opposition to the motion and expressed their support

20  for intervenor's requested stay, Dckt. Nos. 160, 161, 163.  At the hearing, attorney Barbara

21  Nelson appeared on behalf of the intervenor; attorneys Michael Lehmann and A. William

22  Urquhart appeared on behalf of plaintiffs; attorney Stephen Zovickian appeared on behalf of

23  defendant Ingomar Packing Company; attorney George Nicoud appeared on behalf of defendants

24  Los Gatos Tomato Products and Woolf; and attorney James Mayo appeared on behalf of

25  ////

26  ////

1   defendant Salyer.[1]  For the reasons stated at the hearing and for the additional reasons stated

2   herein, intervenor's request for a limited discovery stay of six months is granted.

3   I.       BACKGROUND

4        This is a purported class action lawsuit alleging that defendants violated antitrust law by

5   engaging in anticompetitive conduct in the processed tomato products market.  Originally, the

6   plaintiffs herein filed four separate actions against defendants,[2] but on March 12, 2009, the

7   assigned district judge consolidated the cases, noting that the actions all arose from the same

8   Department of Justice ("DOJ") investigation into anticompetitive conduct within the processed

9   tomato industry[3] and were all purported class actions instituted on behalf of purchasers of tomato

10  products and therefore involve similar questions of fact and of law.[4]  Dckt. No. 88.

11       On November 9, 2009, plaintiffs Four in One, Diversified Foods, Bruce Foods, and

12  Cliffstar filed a consolidated amended class action complaint against defendants SK Foods,

13  Ingomar Packing Company, Los Gatos Tomato Products, Scott Salyer, Stuart Woolf, and Greg

14  Pruett.  Dckt. No. 113.  The amended complaint alleges that defendants are in the business of

15  manufacturing processed tomato products, including but not limited to, tomato sauces, tomato

16

17       [1]  On May 11, 2009, defendant SK Foods filed a notice herein indicating that it had filed
    a bankruptcy petition in the United States Bankruptcy Court for the Eastern District of
18  California.  Dckt. No. 102.  Plaintiffs have acknowledged that this action is stayed as to
    defendant SK Foods.  See Joint Status Report, Dckt. No. 158.

19       [2]  See Bruce Foods and Cliffstar v. SK Foods, et al., 2:09-cv-0027-MCE-EFB;
    Diversified Foods and Cliffstar v. SK Foods, et al., 2:08-cv-3074-MCE-EFB; Cliffstar v. SK
20  Foods, et al., 2:09-cv-0442-MCE-EFB.

21       [3]  On December 10, 2008, the United States filed a criminal information charging Randall
    Rahal, an SK Foods executive, with money laundering, racketeering, and antitrust violations.
22  See United States v. Rahal, 2:08-cr-566-LKK.  On April 29, 2010, the United States filed a
    superceding indictment charging Scott Salyer with, among other things, racketeering, fraud, and
23  conspiracy.  See United States v. Salyer, 2:10-cr-061-LKK.

24       [4]  The district judge also noted that a fifth action, Morning Star Packing Co. v. SK Foods,
    et al., 2:09-cv-208-MCE-EFB, arose from the same DOJ investigation into anticompetitive
25  conduct within the processed tomato industry, but he declined to consolidate that case with the
    other cases because, in that case, the plaintiffs are suing defendants as direct competitors
26  claiming to be harmed by defendants' alleged unlawful business practices in that capacity.

1    paste and diced tomatoes ("Processed Tomato Products") and that defendants engaged in illegal

2    anticompetitive conduct in the United States market for the sale of those Processed Tomato

3    Products.  *Id.* ¶ 1.  Specifically, the complaint alleges, among other things, that defendants

4    conspired together with unnamed co-conspirators to suppress and restrain competition for and to

5    fix, raise, maintain, and/or stabilize the price of Processed Tomato Products sold in the United

6    States, and that as a direct and proximate result of the anticompetitive conduct, defendants

7    restrained competition in the United States market for the sale of Processed Tomato Products and

8    injured Plaintiffs and the purported class in their business and property.  *Id.* ¶ 2, 3.  The

9    complaint alleges that defendants' conduct violated Section 1 of the Sherman Act (15 U.S.C.

10   § 1) and Section 4 of the Clayton Act (15 U.S.C. § 15).

11         Defendants Ingomar Packing Company, Greg Pruett, and Los Gatos Tomato Products

12   deny the allegations in plaintiffs' amended complaint.  *See* Dckt. Nos. 127, 130, 131.

13   Defendants Stuart Woolf and Scott Salyer deny some of the allegations in plaintiffs' amended

14   complaint and have asserted their constitutional right to decline to admit or deny the remaining

15   allegations.  *See* Dckt. Nos. 126, 131.

16         On April 28, 2009, the parties stipulated to permit the United States, through the

17   Antitrust Division of the Department of Justice ("DOJ") and the U.S. Attorney's Office for the

18   Eastern District of California, to intervene in the action for the purpose of seeking to limit

19   discovery temporarily.  Dckt. No. 96.  The parties also stipulated to a limited stay of discovery in

20   the consolidated actions for six months because of the ongoing DOJ criminal investigation.[5]

21   Dckt. No. 97.  On May 8, 2009, the assigned district judge permitted the United States to

22   intervene in the action (pursuant to the stipulation between the parties) for the purpose of seeking

23   to limit discovery temporarily.  Dckt. No. 100.

24   ////

25   ─────────────────────

26         [5]  Although the stipulation and proposed order staying discovery was not signed, the
     parties still abided by the stipulated stay.

1    Upon expiration of the stipulated stay, plaintiffs and defendants Ingomar Packing

2    Company, Pruett, Los Gatos Tomato Products, and Woolf reached an agreement in principle

3    with the United States for a further limited stay of discovery until April 30, 2010, and since that

4    stay expired, plaintiffs voluntarily have not pursued any of the types of discovery covered by the

5    expired stay.  Dckt. No. 164 at 6.

6    The United States did not oppose the production of documents during the stipulated

7    stays.  *Id.* at 8.  Plaintiffs, however, have not yet served document requests because Ingomar

8    Packing Company, Pruett, Los Gatos Tomato Products, and Woolf agreed to produce any

9    documents previously produced to the United States as part of its investigation.  On April 12,

10   2010, Ingomar Packing Company produced approximately 155,000 pages of documents, and on

11   March 29, 2010, Los Gatos Tomato Products produced approximately 12,000 pages of

12   documents.

13   In late May 2010, the United States requested a further stay from plaintiffs.  Dckt. No.

14   164 at 8-9.  After several conferences between the United States and plaintiffs, plaintiffs agreed

15   to an additional six month stay, but only on the condition that the United States would not seek

16   any further discovery stays in this action.  *Id.* at 9.  The United States, however, was not willing

17   to agree to those conditions.  *Id.*

18   II.    SUMMARY OF DISPUTE

19   On August 5, 2010, after being unable to reach an agreement with plaintiffs, the United

20   States filed the instant motion for a limited stay of discovery.  Dckt. No. 159.  The United States

21   argues that, in light of the parallel criminal action, a six month limited stay of interrogatories,

22   depositions, and requests for admissions on the substantive allegations of the criminal case or

23   communications with the United States, as specified in the government's proposed order, is

24   warranted.  *Id.*  The United States also requests that the court authorize the United States to

25   extend the stay if warranted, and the United States proposes that it provide to the court,

26   sometime before the expiration of the stay, a status report on the progress of the criminal action.

1    The government argues that during the six month stay, the case will not be idle since the

2    plaintiffs have received, and continue to receive, unlimited production of documents, and would

3    be entitled to seek discovery on non-substantive issues.  The government also notes that prior to

4    filing its motion, it met and conferred with plaintiffs and plaintiffs were willing to agree to a six

5    month stay, but were just unwilling to agree to a possible extension of the stay beyond six

6    months.  The government argues that permitting unrestricted discovery in this civil action at this

7    time could lead to unnecessary consumption of the court's time and the parties' resources

8    concerning matters that may be largely resolved by the outcome of the criminal case and

9    interfere with a closely related, ongoing criminal proceeding in this district.  Specifically, the

10   government contends that a review of the complaint reveals that plaintiffs' case is inseparable

11   from the criminal charges, alleges many of the exact same facts as stated in the criminal

12   indictment, and is derivative of the criminal investigation.  *See* Dckt. No. 159-1 at 6-7.  The

13   government contends that a limited stay of discovery is necessary to ensure the integrity of the

14   criminal proceeding and protect the rights of the defendant, the United States, and others.  *Id.* at

15   7-9.

16   Defendant Ingomar Packing Company supports the limited discovery stay sought by the

17   government for the reasons stated by the government, and for two additional reasons: (1)

18   Ingomar Packing Company has already produced 155,000 pages of documents to plaintiffs, and

19   (2) the additional time represented by the limited stay imposes no undue prejudice on plaintiffs

20   since any alleged "conspiracy" has terminated and there is therefore nothing to enjoin in this

21   action.  Dckt. No. 160.

22   Defendants Los Gatos Tomato Products and Woolf also support the limited discovery

23   stay because of the pending criminal proceedings against defendant Salyer.  They contend that

24   they would be materially prejudiced by allowing depositions to proceed at this juncture in the

25   civil action since many of the probable deponents will likely invoke their Fifth Amendment

26   privilege not to testify and because waiting for the criminal case against Salyer to proceed may

1   narrow the scope of discovery that will take place in this action.  They argue that testimony at

2   the criminal trial will show that they had nothing to do with the bribery, racketeering, and

3   adulteration in which Salyer and others are alleged to have engaged.  Dckt. No. 161.

4         Defendant Salyer also supports the limited discovery stay and states that because of the

5   pending indictment against him, which substantially overlaps with the allegations in this case, he

6   reserves the right to assert his Fifth Amendment privilege as to the limited discovery suggested

7   by the government and reserves the right to seek a stay of *all* discovery should such a motion

8   become necessary to protect his constitutional rights to a fair trial in the criminal case.  Dckt. No.

9   162.

10        Plaintiffs oppose the government's requested stay, dckt. No. 164, arguing that Fifth

11  Amendment rights will be minimally implicated in the civil case and that plaintiffs have a

12  significant interest in proceeding with this action expeditiously.  Plaintiffs also argue that

13  discovery has already been significantly delayed by previous stays; that the loss or destruction of

14  evidence during further stays would irreversibly prejudice plaintiffs; that further stays may

15  preclude plaintiffs form advancing meritorious claims if statutes of limitation run; and that any

16  benefits from the Salyer criminal trial will be minimal and do not outweigh the potential

17  prejudice continued stays would have on plaintiffs' case.  *Id.* at 10-19.  Therefore, plaintiffs

18  contend, instead of imposing a blanket stay the court should issue a ruling as to particular

19  discovery disputes as they arise.  *Id.* at 20.  Finally, plaintiffs contend that if the court does

20  impose a blanket stay on discovery, it should specify that it is the last stay the DOJ will receive

21  in this case.  *Id.* at 21.

22        Plaintiffs also argue that, while they are sensitive to the substantial public interest in the

23  criminal action against Salyer, "where discovery has already been stayed for well over a year,

24  the balance is shifting, so that it is now the interests of the plaintiffs in this civil litigation to

25  obtain justice that is being undermined by an open-ended situation without any firm end-date for

26  the discovery stays."  Dckt. No. 164 at 7.

1    III.    STANDARDS

2           "While a district court may stay civil proceedings pending the outcome of parallel

3    criminal proceedings, such action is not required by the Constitution." *Federal Sav. and Loan*

4    *Ins. Corp. v. Molinaro,* 889 F.2d 899, 902 (9th Cir. 1989) (citing *Securities & Exchange*

5    *Comm'n v. Dresser Indus.*, 628 F.2d 1368, 1375 (D.C. Cir.), *cert. denied*, 449 U.S. 993 (1980)

6    and *United States v. Kordel*, 397 U.S. 1 (1970)). "Nevertheless, a court may decide in its

7    discretion to stay civil proceedings . . . 'when the interests of justice seem [ ] to require such

8    action.'" *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 325 (9th Cir. 1995) (quoting

9    *Dresser*, 628 F.2d at 1375 and *Kordel*, 397 U.S. at 12 n. 27).

10          "A court must decide whether to stay civil proceedings in the face of parallel criminal

11   proceedings in light of the particular circumstances and competing interests involved in the

12   case." *Molinaro,* 889 F.2d at 902 (citing *Dresser,* 628 F.2d at 1375). "Obviously a court should

13   consider the extent to which the defendant's fifth amendment rights are implicated." *Molinaro,*

14   889 F.2d at 902 (citing *Dresser,* 628 F.2d at 1375-76). Other factors a court should consider will

15   vary according to the case itself, but generally will include:

16          (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or
            any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2)
17          the burden which any particular aspect of the proceedings may impose on
            defendants; (3) the convenience of the court in the management of its cases, and
18          the efficient use of judicial resources; (4) the interests of persons not parties to the
            civil litigation; and (5) the interest of the public in the pending civil and criminal
19          litigation.

20   *Molinaro*, 889 F.2d at 902-03 (citing *Golden Quality Ice Cream v. Deerfield Specialty Papers,*

21   *Inc.*, 87 F.R.D. 53, 56 (E.D. Pa. 1980); *Kordel*, 397 U.S. at 11-12; *Dresser*, 628 F.2d at

22   1374-76).

23          On April 19, 2010, another magistrate judge in this district stayed all discovery in a civil

24   matter charging defendant Salyer with alleged illegal hiring practices and violations of RICO for

25   a period of six months. *Brewer v. Salyer,* 2010 WL 1558454, 1:06cv1324-AWI-DLB (E.D. Cal.

26   Apr. 19, 2010) (Beck, J.) (finding that a stay of discovery was warranted in light of the criminal

1  indictment against Salyer, due to Salyer's limited ability to defend both the civil and criminal

2  action and the potential Fifth Amendment issues that might arise in the civil action).  Also, on

3  June 18, 2010, a district judge in this district issued an order stating that "all discovery [in SK

4  Foods' bankruptcy action] pertaining to discovery directed to defendant's criminal counsel and

5  any deposition of defendant himself is stayed pending further order of this court."  *United States*

6  *v. Salyer*, 10cr061-LKK, Dckt. Nos. 115, 183; *see also* Dckt. No. 159-1 at 9, n.1.

7  IV.    <u>DISCUSSION</u>

8         The court acknowledges that discovery has already been delayed in this case due to the

9  parties' stipulated stays,[6] and the court is cognizant that a trial in defendant Salyer's criminal

10  action does not appear imminent.[7]  Nonetheless,  the court finds that Fifth Amendment

11  considerations and the *Molinaro* factors weigh in favor of granting the sixth month limited stay

12  sought by the United States.[8]  However, the government's request for an optional extension of

13  the sixth month stay will be denied.  Instead, if the United States determines that a further stay is

14  warranted, it shall file a new motion for a stay in accordance with this court's Local Rules, and

15  the court will then re-weigh the Fifth Amendment considerations and the *Molinaro* factors as

16  they exist at that time.

17  ////

18  ////

19  ───────────────

20     [6]  Two of the original cases were filed in December 2008 and the other two were filed in January and February of 2009.  The amended complaint was filed in November 2009.

21     [7]  On August 27, 2010, the district judge assigned to defendant Salyer's criminal case
22  issued an order setting motion hearings in January 2011.  Also, although defendant Salyer was still detained at the time that the government filed its motion for a stay, therefore justifying the
23  government's argument that his detention would likely accelerate trial, defendant Salyer was released on bail on September 3, 2010.

24     [8]  This finding is bolstered by the fact that during the parties' negotiations regarding the
25  government's stay request, plaintiffs agreed to a six month limited stay of discovery.  Also, although plaintiffs propose that, as an alternative to a blanket stay of discovery, the court address
26  the interests of the parties with regard to specific discovery disputes, such a proposal would be inefficient for the parties and the court.

A.  <u>Fifth Amendment Considerations</u>

Here, there is significant overlap between the civil and criminal actions, and any attempt by plaintiffs to depose Salyer in the civil action will implicate his Fifth Amendment rights.  "[I]f discovery moves forward, [Salyer] will be faced with the difficult choice between asserting his right against self-incrimination, thereby inviting prejudice in the civil case, or waiving those rights, thereby courting liability in the civil case." *Jones v. Conte*, 2005 WL 1287017, at *1 (N.D. Cal. Apr.19, 2005) (quoting *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003)).  Here, since the simultaneous civil and criminal proceedings involve the same or closely related facts, Fifth Amendment concerns weigh in favor of granting a stay.  *See United States v. Booth,* 2010 WL 315543 (E.D. Cal. Jan. 19, 2010) (Ishii, J.) (staying a civil case completely until resolution of the parallel criminal case); *Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Financial, Inc*., 2009 WL 2136986, at *2 (E.D. Cal. Jul. 15, 2009) (Damrell, J.) (granting a six month stay of all proceedings in a civil fraud case when a parallel criminal case was ongoing because "[b]oth the civil and criminal cases arise from the alleged scheme to defraud . . . [, and as] such, the pending civil litigation may substantially implicate defendants' Fifth Amendment rights against self-incrimination, create unnecessary complexities with respect to discovery, expose defendants' strategy or theories with respect to the criminal case, or otherwise prejudice the pending criminal proceedings."); *Acacia Corporate Management, LLC v. United States*, 2009 WL 1531099 (E.D. Cal. May 28, 2009) (Ishii, J.) (granting stay of civil action until the resolution of the parallel criminal case); *S.E.C. v. Schroeder*, 2008 WL 152227 (N.D. Cal. Jan. 15, 2008) (postponing the deposition of the defendant in a civil action for four months because there was an ongoing criminal investigation that might implicate him, even though no criminal charges had even been brought against him); *Rodriguez v. Summit Mortg. Realty, Inc*., 2007 WL 2029323 (N.D. Cal. July 11, 2007) (continuing a stay of civil proceedings for seven months or until the criminal trial was complete, whichever came first, because of Fifth Amendment concerns, and stating that "[w]hile the court and the public generally have an interest in the

expeditious resolution of litigation, under the circumstances presented here, the court concludes

that, on balance, the interests of justice require an extension of the stay of these proceedings);

*see also McCormick v. Rexroth*, 2010 WL 934242 (N.D. Cal. Mar. 15, 2010); *S.E.C. v. Nicholas*,

569 F. Supp.2d 1065 (C.D. Cal. 2008); *Souza v. Schiltgen*, 1996 WL 241824 (N.D. Cal. May 6,

1996); *Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996).

　　　　B.  Interests of the Plaintiffs

　　　　Although plaintiffs have a strong interest in proceeding expeditiously with this litigation,

especially since the case has been pending for almost two years and plaintiffs have yet to file a

motion for class certification, the stay at issue is for six months and does not limit plaintiffs'

ability to conduct discovery altogether.  Plaintiffs can still conduct investigations and engage in

document discovery.  In fact, plaintiffs have already received over 167,000 pages of documents

in this action.

　　　　C.  Burden on Defendants

　　　　Denying a stay at this time presents a significant burden on defendant Salyer in defending

the criminal case as well as the numerous civil cases pending against him.  *See Brewer v. Salyer*,

1:06cv1324-AWI-DLB.  Further, allowing depositions to proceed in the civil case creates

concern that some witnesses under investigation will potentially invoke their Fifth Amendment

rights, frustrating the discovery process.

　　　　D.  Convenience of the Court and Judicial Efficiency

　　　　There is significant judicial efficiency in granting the United States' request for a limited

stay of discovery.  The allegations in the two cases are substantially the same, it is likely that the

proceedings will rely on much of the same evidence and many of the same witnesses.  Moreover,

the cases will raise similar, if not identical, issues.  Permitting unrestricted discovery in this civil

action at this time could lead to unnecessary consumption of the court's time and the parties'

resources concerning matters that may be largely resolved by the outcome of the criminal case.

////

1    Plaintiffs argue that the different burdens of proof render the actions "fundamentally different,"

2    and that in the event of guilty pleas or verdicts, even after all such pleas are entered or criminal

3    convictions obtained, plaintiffs will still need to conduct further discovery to learn the full scope

4    of defendants' alleged conspiracy.  The point is taken.  Nonetheless, it is apparent here that "the

5    criminal case may later streamline discovery in the civil case," and this factor weighs in favor of

6    a stay.  *Bridgeport Harbour Place I, LLC*, 269 F. Supp.2d 6, 9 (D. Conn. 2002).

7            E.  Interests of Third Persons

8            The government argues that any interests of non-parties will be minimally affected by the

9    proposed stay.  The court agrees.  Non-party victims would be materially aided by any criminal

10   convictions, and any non-party potential defendants would avoid the prospect of having to

11   choose between responding to questions at deposition or asserting their Fifth Amendment rights.

12   Thus, this factor weighs in favor of the requested stay.

13           F.  Interests of the Public

14           Proceeding with unfettered civil discovery at this point risks undermining the public's

15   right to fair and efficient prosecution of the criminal case and would distract both the defendants

16   and the government from fully preparing their respective cases in the criminal matter.  Permitting

17   unfettered civil discovery at this time would also allow the defendant to obtain discovery that

18   would otherwise not be permitted under the more restrictive criminal rules.  *Degen v. United*

19   *States*, 517 U.S. 820, 825-26 (1996) ("A criminal defendant is entitled to rather limited

20   discovery, with no general right to obtain the statements of the Government's witnesses before

21   they have testified.  In a civil case, by contrast, a party is entitled as a general matter to discovery

22   of any information sought if it appears reasonably calculated to lead to the discovery of

23   admissible evidence.  The government contends Degen might use the rules of civil discovery in

24   the forfeiture suit to gain an improper advantage in the criminal matter, prying into the

25   prosecution's case in a manner not otherwise permitted.  These problems are not uncommon

26   when criminal and civil forfeiture suits are pending at the same time . . . the risk of

1  compromising the criminal case could be avoided by staying the civil suit until the prosecution is

2  over.").

3         For the reasons stated above and at the hearing, the court finds that the Fifth Amendment

4  considerations and the *Molinaro* factors weigh in favor of granting the sixth month limited stay

5  sought by the United States.  However, the government's request for an optional extension of the

6  sixth month stay will be denied.

7  V.    <u>CONCLUSION</u>

8         Accordingly, IT IS HEREBY ORDERED that:

9      1.  The government's motion for a limited discovery stay, Dckt. No. 159, is granted.

10      2.  As provided herein, certain discovery shall be stayed in these consolidated cases for

11  six months from the date this order is filed.

12      3.  During the limited discovery stay, no interrogatories, requests to admit, or depositions

13  will be taken that reflect, refer to, or relate to any understandings, agreements, contacts,

14  meetings, or communications, between or among any processors of tomato products and/or

15  agents of tomato processors, relating to the sale, terms of sale, pricing, production, volume,

16  market share, customers, capacity, or distribution of processed tomato products.

17      4.  During the limited discovery stay, no interrogatories, requests to admit, or depositions

18  will be taken that reflect, refer to, or relate to grand jury proceedings concerning the processed

19  tomato products industry, including any party's or witness' communications with the United

20  States, or with the grand jury investigating the processed tomato products industry, except by

21  order of the Court upon good cause shown and consistent with governing law.

22      5.  During the limited discovery stay, no interrogatories, requests to admit, or depositions

23  will be taken that reflect, refer to, or relate to any fraudulent activity including, but not limited

24  to, embezzlement, theft of trade secrets, commercial bribery, honest services fraud, adulterated

25  food, mislabeling of food, wire fraud, and mail fraud.

26  ////

6.   To the extent consistent with the above, the following discovery is permitted during the limited discovery stay:

      a.   The Parties are entitled to seek document discovery;

      b.   The Parties are entitled to seek written answers disclosing the identities of persons in positions of management or control of defendants' and other's respective tomato operations, including any directors, officers, managing agents, and employees; defendants' and other's organizational structures and related entities;  financial information about defendants and others and their related entities; and the storage, location, retention, destruction, or identity of relevant corporate records.

7.   This order does not prohibit the service of interrogatories, requests for admissions, requests for production of documents, or third party document subpoenas, as set forth in paragraph 6(a) above, except to the extent that it requires the production of discovery which is stayed hereunder.

8.   All formal discovery requests shall be served on the United States at least three weeks before the discovery is due to be produced.  Any party and/or the United States may object to discovery on the basis that the requested discovery seeks information or discovery prohibited under this order.

9.   Nothing in this order is intended to foreclose any objection to discovery that is otherwise permitted by law.

10.   Nothing in this order prevents the parties from negotiating discovery preservation and protective orders except to the extent that they would violate this order.

11.   Any party and/or the United States can request a modification of this order upon a showing of good cause and any party and/or the United States is entitled to oppose such a request.

////

////

1    12.  If the United States seeks a further stay of discovery beyond the expiration of the

2   stay provided for herein, it shall file a motion for such a further stay in accordance with the

3   Eastern District of California Local Rules.

4        SO ORDERED.

5   Dated:  November 10, 2010.

6                                EDMUND F. BRENNAN
                                 UNITED STATES MAGISTRATE JUDGE